MOELLER v. WAYNE COUNTY BOARD OF SUPERVISORS.

1. STATUTES—PROVISO—PURPOSE.
   The general office of a proviso is to except something from the enacting clause, or to qualify and restrain its generality and prevent misinterpretation.

2. SAME—PROVISO—CONSTRUCTION.

Proviso to enacting section of statute which creates or defines a right or power is to be accepted according to its natural, common, and most obvious meaning and is to be strictly construed and limited to objects fairly within its terms as gathered both from the section of which it forms a part and a general purview of the whole content.

3. SAME—PROVISO—POSITION AS AFFECTING CONSTRUCTION.

The natural and appropriate office of a proviso being to restrain or qualify some preceding matter, a proviso should be confined to what precedes it unless it clearly appears to have been intended to apply to some other matter, it is to be construed in connection with the section of which it forms a part and is substantially an exception and while its position has a great and sometimes a controlling influence upon the extent of its applicability the inference arising from its position cannot override its plain general intent.

4. SAME—PROVISO—IRRELEVANCY—REPUGNANCY.

A proviso is to be rejected if irrelevant to the enacting part of an act or repugnant to the body of the act.

5. SAME—CONSTRUCTION OF PROVISO—LEGISLATIVE INTENT.

Rule as to construction of proviso is not to be enforced at all events but is based on presumption that legislative intent is thereby reached.

6. SAME—MEANINGLESS PROVISO—PER DIEM COMPENSATION OF SUPERVISORS.

In statute in which enacting section provided maximum compensation of supervisors for attending meetings of board of four dollars a day, proviso as to counties having an assessed valuation in excess of $100,000,000 permitting maximum of four dollars a day for same purpose *held*, a nullity (1 Comp. Laws 1929, § 1152, as amended by Act No. 84, Pub. Acts 1933).

7. SAME—AMENDMENTS—ALTERATION DURING PASSAGE—TITLE.

In determining whether a bill, to amend an earlier statute, has been altered or changed on its passage through either branch of the legislature so as to change its original purpose, Supreme Court is not limited by the title or contents of the bill as introduced in either branch of the legislature but by the title of the act being amended (Const. 1908, art. 5, § 22).

8. SAME—AMENDMENT—TITLE OF ACT—SUFFICIENCY.

Any provisions germane to the subject expressed in the title may properly be included in the act, or added thereto by amendment and it is sufficient if the title fairly expresses the subject, or is sufficiently comprehensive to include the several provisions relating to or connected with that subject (Const. 1908, art. 5, § 22).

9. SAME—AMENDMENT—TITLE OF ACT.

Bill which merely contained provisions relating to pay of supervisors as it was originally introduced into the house of representatives that was amended to include provisions relative to duties of supervisors concerning contracts and relative to holding other public offices *held*, not invalid as contravening prohibition of Constitution that a bill not be altered or changed in the course of its passage where the additional provisions are comprehended and included in the title of original act amended (Const. 1908, art. 5, § 22; 1 Comp. Laws 1929, § 1120 *et seq.*; Act No. 84, Pub. Acts 1933, amending 1 Comp. Laws 1929, § 1152).

10. SAME—READING DURING ENACTMENT—AMENDMENTS.

The constitutional requirement that bills be read in course of their passage in the legislature does not apply to amendments so as to compel bills to be read the required number of times in their amended forms hence bill that was introduced in house and read twice by reading title of the bill and once at length, transmitted to the senate, there amended and read three times, returned to house and senate amendments concurred in complied with constitutional requirements that bill be read three times in each house before final passage (Const. 1908, art. 5, § 23).

11. COUNTIES—SUPERVISORS—COMPENSATION—POWERS—STATUTES.

Provisions, forbidding supervisor from receiving a civil appointment during period in which he is a supervisor or from being interested in any contract or business transaction with the county, added to bill amending section as to their compensation, *held*, within title of act to define supervisors' powers and duties since such provisions are limitations of their powers (Const. 1908, art. 5, § 21; Act No. 84, Pub. Acts 1933, amending 1 Comp. Laws 1929, § 1152).

Appeal from Wayne; Nicol (Henry G.), J. Submitted January 13, 1937. (Docket No. 128, Calendar No. 39,346.) Decided April 29, 1937. Rehearing denied June 7, 1937.

Bill by Julius H. Moeller, a taxpayer, against Wayne County Board of Supervisors, Wayne County Board of Auditors, and Jacob P. Sumeracki, Wayne County Treasurer, to enforce provisions of Act No. 84, Pub. Acts 1933, relative to compensation of supervisors for services rendered, for an injunction and other relief. Bill dismissed. Plaintiff appeals. Reversed.

*George F. Mehling,* for plaintiff.

*Duncan C. McCrea,* Prosecuting Attorney, *Garfield A. Nichols* and *William L. Brunner,* Assistant Prosecuting Attorneys, for defendants.

Sharpe, J. This is an action brought by plaintiff as taxpayer of Wayne county to enforce the provisions of Act No. 84, Pub. Acts 1933, which act is one of several amendments to Act No. 156, Pub. Acts 1851. In the bill of complaint it is charged that the 1933 act became effective October 18, 1933; that since said date the supervisors of Wayne county have received and accepted compensation in excess of the amount provided for in said act.

The facts are not in dispute. The defendants claim the above act is unconstitutional because the act is impossible of correct mathematical computation and incapable of being enforced; that the bill was altered or amended during its passage through the legislature in contravention of Const. 1908, art. 5, § 22, which provides that, "No bill shall be altered or amended on its passage through either house so as to change its original purpose;" that in the pas-

sage of said act, Const. 1908, art. 5, § 23, providing that, "Every bill shall be read three times in each house before the final passage thereof," was ignored; and that the inclusion of new matter in the senate to the house bill, regulating the powers, privileges and duties of supervisors, offends against Const. 1908, art. 5, § 21, in that said matter was not germane to the title of the act. The trial court dismissed plaintiff's bill of complaint, from which appeal is taken.

The record in this cause shows that until November 30, 1926, the members of the board of supervisors of Wayne county were paid for their services at the rate of $4 per day and from December 1, 1926, until November 30, 1932, such compensation was increased to $7 per day and thereafter at the rate of $5 per day; that prior to October 17, 1933, compensation of members of the board of supervisors was regulated by 1 Comp. Laws 1929, § 1152, which provided for payment of not more than $7 per day to the board of supervisors of Wayne county; that Act No. 84, Pub. Acts 1933, purported to regulate the amount of compensation to be paid to members of various boards of supervisors throughout the State and provided as follows:

"Sec. 30. Every member of such board of supervisors shall be allowed such compensation of not to exceed four dollars per day for his services in attending the meetings of said board, and not to exceed ten cents a mile for each mile necessarily traveled in going to and returning from the place of such meeting, as shall be fixed by the board of supervisors, by resolution, by majority vote of the members elect; said mileage to be paid for the first day of each meeting, only: * * * Provided, That in counties having an assessed valuation in excess of one

hundred million dollars, as determined by the State board of equalization, the per diem compensation of members of the board of supervisors, may by resolution of the board, be increased to, but not to exceed four dollars per day, for services in actual attendance at the meetings of said board. * * * No person elected or appointed a member of the board of supervisors of any county shall receive any civil appointment within such county, or from any county authority, during the term for which he is elected or appointed. All such appointments and all votes given for any person so elected or appointed for any such office or appointment shall be void except where authorized by city or village charter. No member of such board of supervisors shall be interested directly or indirectly in any contract or other business transaction with any such county, or any board, office or commission thereof during the time for which he is elected or appointed, nor for one year thereafter.''

Defendants contend that the above provisions of Act No. 84, Pub. Acts 1933, pertaining to compensation are incapable of correct arithmetical computation. The history of the above act shows that the original act pertaining to boards of supervisors was enacted in 1851 and known as Act No. 156, Pub. Acts 1851; that since the enactment of the initial act, there have been 11 amendments to section 30, four of which treat Wayne county the same as other counties in the State, and three make special provisions for counties having a population of less than 40,000 inhabitants; that in the first five amendments wherein Wayne and Saginaw counties were treated differently from counties in general the rate per day was the same in all counties; and that with the exception of Act No. 40, Pub. Acts 1929, the supervisors of the more populous counties never received

greater pay per day than the supervisors of counties in general.

It is apparent that the legislature in amending the law from time to time had in mind fixing and establishing the maximum amount that members of the board of supervisors could receive for services rendered to the county. *Ewing* v. *Ainger,* 96 Mich. 587; *People, ex rel. Kennedy,* v. *Wayne County Treasurer,* 25 Mich. 83.

Act No. 84, Pub. Acts 1933, contains the following proviso:

"SEC. 30. Provided, That * * * the per diem compensation of members of the board of supervisors; may by resolution of the board, be increased to, but not to exceed four dollars per day, for services in actual attendance at the meetings of said board."

In *United States* v. *Morrow,* 266 U. S. 531, 534 (45 Sup. Ct. 173), the court said:

"The general office of a proviso is to except something from the enacting clause, or to qualify and restrain its generality and prevent misinterpretation."

In *Township of Clearwater* v. *Kalkaska County Board of Supervisors,* 187 Mich. 516, 525, we said:

"A proviso to any enacting section in a statute which creates and defines a right or power is to be accepted according to its natural, common, and most obvious meaning, strictly construed and limited to the objects fairly within its terms, as gathered both from the section of which it forms a part and a general purview of the whole context."

See, also, *Greacen* v. *Buckley & Douglas Lumber Co.,* 167 Mich. 569; *People* v. *American Central Ins.*

*Co.,* 179 Mich. 371; *Luce* v. *State Highway Commissioner,* 181 Mich. 599.

"The natural and appropriate office of the proviso being to restrain or qualify some preceding matter, it should be confined to what precedes it unless it clearly appears to have been intended to apply to some other matter. It is to be construed in connection with the section of which it forms a part, and it is substantially an exception. * * * 'While the position of a proviso in a statute has a great and sometimes a controlling influence upon the extent of its applicability, yet the inference from its position cannot override its plain general intent.' If irrelevant to the enacting part and meaningless with reference thereto, or repugnant to the body of the act, it has been rejected. * * * It is not an arbitrary rule to be enforced at all events, but is based on the presumption that the meaning of the law-maker is thereby reached." 2 Lewis' Sutherland, Statutory Construction (2d Ed.), p. 673.

The above proviso in its terms fails of any purpose apart from the general provisions contained in the body of the act. It is meaningless and must be considered a nullity.

It is next contended by defendants that the act was so amended during its passage through the legislature as to contravene that part of Const. 1908, art. 5, § 22 which provides that "no bill shall be altered or amended on its passage through either house so as to change its original purpose." In determining whether or not a bill has been "altered or changed" we are not limited by the title or contents of the bill as introduced into either branch of the legislature, but to the title of the act which is being amended.

In *Westgate* v. *Township of Adrian,* 161 Mich. 333, an original act (Act No. 145, Pub. Acts 1887) was

amended by Act No. 71, Pub. Acts 1903. The objection was made that the amendment was unconstitutional "for the reason that the title to the act is not broad enough to cover the matter embraced in the amendment, and is therefore in violation of article 4, § 20 of the Constitution (1850)." The court said:

"This court has frequently held that, if the amendment might have been incorporated in the act under its original title, this section is not violated. * * * It will be noted that the original title contains the word 'regulate.' Under that term, very broad powers may be exercised. It means both government and restriction. * * *

"Any provisions germane to the subject expressed in the title may properly be included in the act, or added thereto by amendment. It is sufficient if the title fairly expresses the subject, or is sufficiently comprehensive to include the several provisions relating to or connected with that subject, Cooley, on Constitutional Limitations (6th Ed.), p. 172; *People, ex rel. Drake, v. Mahaney,* 13 Mich. 481; *People v. Kelly,* 99 Mich. 82; *Soukup v. Van Dyke,* 109 Mich. 679; *Fortin v. Bay City Traction & Electric Co.,* 154 Mich. 316. We think the title in question is clearly broad enough to comprehend the subject-matter of the amendment."

See, also, *Lundstrom v. Township of Ellsworth,* 196 Mich. 502; *Detroit International Bridge Co. v. American Seed Co.,* 249 Mich. 289; *People v. Martin,* 235 Mich. 206.

The original act of 1851* was entitled as follows:

"An act to define the powers and duties of the boards of supervisors of the several counties, and to confer upon them certain local, administrative and legislative powers."

---

* See 1 Comp. Laws 1929, § 1120 *et seq.*—REPORTER.

It is contended by defendants that the act as introduced into the house merely contained provisions relative to the pay of supervisors and did not contain the provisions which deal with the duties of supervisors concerning contracts and provisions relative to holding other public offices. We are of the opinion that the provisions as are now found in the act are comprehended and included in the title of the original act. The amended act relates to the powers and duties of boards of supervisors and is not invalid upon that ground.

The next question presented for review is found in the following question, Was Act No. 84, Pub. Acts 1933, passed by the legislature contrary to that part of article 5, § 23, of the Constitution which provides that, "Every bill shall be read three times in each house before the final passage thereof?" It appears to be undisputed that the act in question was originally introduced into the house of representatives January 4, 1933, and was there known as House Bill No. 46. The bill was later sent to the senate and while there certain provisions ultimately found in the act were added to the bill. The provisions added related to the prohibition of supervisors having a pecuniary interest in contracts with the county and to the right of supervisors to hold other public offices in the county during their term as supervisors. The bill was returned to the house March 30th and the added provisions concurred in by the house and the bill ordered enrolled. On March 31, 1933, the house voted for reconsideration of the bill and on May 9, 1933, the senate amendments were concurred in; the bill was given immediate effect and ordered enrolled. The bill as first introduced in the house was read three times and the amended bill read three times

in the senate, but the amended bill upon its return to the house was not read three times.

In the case of *Toll* v. *Jerome,* 101 Mich. 468, the claim was made that the act was unconstitutional first, because not introduced within the first 50 days of the session and also because the bill was not read three times. The court said:

"This court have repeatedly held that a substitute is not a new bill, and that such substitute may be offered after the lapse of the first 50 days of the session, if it is germane to the subject covered by the first bill. * * *

"The suggestion that the bill was not read three times is answered by the foregoing cases, which indicate that it is entirely proper to substitute a new bill by way of amendment at any stage of the proceedings."

In *People, ex rel. Hart,* v. *McElroy,* 72 Mich. 446, a house bill, before it was referred to a committee, was read twice by its title and the substitute once at length before its passage in the house. In the shape of the substitute, it was read twice by its title and once at length in the senate before its passage. The court said:

"As to the reading of the bill and substitute twice by titles, and only once at length, it cannot be considered, at this late day, a violation of article 4, § 19 of the Constitution (1850), which provides that—

" 'Every bill and joint resolution shall be read three times in each house before the final passage thereof.'

"The legislative practice of reading the same twice by title, and only once at length, has been maintained too long in this State to be now overthrown by the courts. It would deprive us of all statutory law. The Constitution, in terms, does not

direct that the reading shall be at length, and while such reading might be the better practice, we cannot hold that it is imperatively required. that it should be so read more than once. This act, as it passed, was read once in each house at length, as appears from the journals.''

1 Cooley, Constitutional Limitations (8th Ed.), p. 288, *et seq.*, lays down the rule that, ''Where a bill is amended after its first or second reading it need not be again read in its entirety on three different days.''

See, also, *State of Florida, ex rel. Lamar,* v. *Dillon,* 42 Fla. 95 (28 South. 781); *Cleland* v. *Anderson,* 66 Neb. 252 (92 N. W. 306, 96 N. W. 212, 98 N. W. 1075, 5 L. R. A. [N. S.] 136); *Capito* v. *Topping,* 65 W. Va. 587 (64 S. E. 845, 22 L. R. A. [N. S.] 1089); *Tennessee Coal, Iron & R. Co.* v. *Hooper,* 131 Tenn. 611 (175 S. W. 1146); *State* v. *Brown,* 33 S. C. 151 (11 S. E. 641).

In 59 C. J. p. 557, § 67, the rule is stated as follows:

''The constitutional requirement that bills be read in course of their passage does not apply to amendments so as to compel bills to be read the required number of times in their amended forms.''

In *Evanhoff* v. *State Industrial Accident Com'n,* 78 Ore. 503, 523 (154 Pac. 106), that court said:

''It is further urged that the act is unconstitutional because the original bill was amended in many particulars during its progress through the legislature, and the whole bill as amended was not read by sections on three several days, as required by section 19, article 4, of the Constitution. Such has never been the practice in this State, and what little authority can be found on the subject is contrary to

plaintiff's contention: *People, ex rel. Beardsley,* v. *Wallace,* 70 Ill. 680. In that case the court says:

" 'It is also objected that the tenth section of the act was not constitutionally adopted, because it was ingrafted as an amendment whilst the bill was being considered, and was not read on three several days in the house adopting it as an amendment. We are clearly of opinion that the requirement does not apply to an amendment, and the objection cannot prevail.' "

It would appear from the foregoing cases that that part of Const. 1908, art. 5, § 23 is not violated if the amendments are germane to the purpose of the original bill, even though not read three times, provided the original bill complies with section of the Constitution above quoted.

We think the provisions of the amended act which forbid a supervisor receiving a civil appointment during the period in which he is a supervisor or that part of the amendment forbidding him from being interested in any contract or business transaction with the county is clearly comprehended within the title of the original act. The title of the original act speaks in terms of 'powers and duties' of the board of supervisors. The present amendment is a limitation of the 'power' of a supervisor. See, *Westgate* v. *Township of Adrian, supra.*

The decree of the trial court is reversed and a decree will be entered in accordance with this opinion. Plaintiff may recover costs.

FEAD, C. J., and NORTH, WIEST, BUTZEL, BUSHNELL, POTTER, and CHANDLER, JJ., concurred.