BULLY v GENERAL MOTORS CORPORATION

Docket No. 59153. Submitted June 15, 1982, at Lansing.—Decided
October 6, 1982. Leave to appeal applied for.

Donna Bully and others brought a class action in Genesee Circuit
Court on behalf of themselves and other Michigan female
employees of General Motors Corporation who were employed
during the period from November 20, 1970, to March 31, 1977,
and were members of the United Automobile Workers. Plain-
tiffs' class action sought to have the provision in the company
sponsored disability insurance plan which provided a 52-week
benefit period for disabilities resulting from injury or illness
but limited disability benefits to six weeks if due to pregnancy
or the resulting childbirth declared violative of the Fair Em-
ployment Practices Act provision concerning sex discrimina-
tion. Plaintiffs sought as damages the amount of disability
benefits each class member would have received if her disabil-
ity had arisen from injury or illness rather than from preg-
nancy. Plaintiffs moved for summary judgment. Defendant filed
a cross-motion for summary judgment. Earl E. Borradaile, J.,
granted plaintiffs' motion, finding that the pregnancy benefits
limitation constituted sex discrimination in violation of the
Fair Employment Practices Act and that pregnancy was an
"injury or sickness" within the meaning of the collective-bar-
gaining agreement which mandated that disability insurance
benefits be provided. Defendant appeals by leave granted. *Held:*

1. The provision in the now-repealed Fair Employment Prac-
tices Act which made sex discrimination a prohibited act was

REFERENCES FOR POINTS IN HEADNOTES

[1] 15 Am Jur 2d, Civil Rights § 158.
   73 Am Jur 2d, Statutes § 106.
   Pregnancy leave or maternity leave policy, or lack thereof, as
   unlawful employment practice violative of Title VII of the Civil
   Rights Act of 1964 (42 USCS §§ 2000e et seq.). 27 ALR Fed 537.
[2, 3] 15 Am Jur 2d, Civil Rights § 158.
[3] 16 Am Jur 2d, Constitutional Law § 291.
[4-6] 15 Am Jur 2d, Civil Rights § 178.
[5] 73 Am Jur 2d, Statutes § 178.
[6] 53 Am Jur 2d, Master and Servant § 137.

not violative of the title-object clause of the Michigan Constitution prior to the amendment of the title to include sex discrimination, since sex discrimination was within the general object expressed in the title of the act prior to amendment of the title of the act to specifically include sex discrimination.

2. Michigan courts, in construing the meaning and intent of the Michigan Fair Employment Practices Act, are not bound by the construction given by federal courts to the similar federal legislation upon which the Michigan act was modeled and based.

3. The denial of long-term disability benefits for disabilities which are pregnancy related violates the sex discrimination provisions of the Michigan Fair Employment Practices Act.

4. The 1978 amendment by the Lesiglature which explicitly made the exclusion of any right on the basis of pregnancy an act of sex discrimination was not a retroactive broadening of the scope of activities which constituted sex discrimination but rather was a clarification of the original legislative intent made in response to the statutory construction given to the similar federal statute by the United States Supreme Court.

5. The collective-bargaining agreement which gave rise to the disability benefit plan provided by defendant clearly premises eligibility for benefits on the existence of a disability and treats pregnancy as a disability. Accordingly, the parties to that agreement clearly intended a disability caused by pregnancy to be included in the general provisions for eligibility despite the use of the phrase "as a result of any injury or sickness".

Affirmed.

1. CIVIL RIGHTS — FAIR EMPLOYMENT PRACTICES ACT — SEX DISCRIMINATION — TITLE-OBJECT CLAUSE.

The prohibition against sex discrimination contained in the former Fair Employment Practices Act was not violative of the title-object clause of the Michigan Constitution prior to the 1972 amendment of that act which added sex discrimination as one of the stated objects in the title of the act, since the title of an act need not serve as an index to all that an act contains; the title-object clause is satisfied if the act centers on one general object or purpose which the title comprehensively declares in general terms and if the provisions in the body of the act not mentioned in the title are germane, auxiliary, or incidental to that general purpose (Const 1963, art 4, § 24; MCL 423.301 et seq.; MSA 17.458 et seq.).

2. CIVIL RIGHTS — FAIR EMPLOYMENT PRACTICES ACT — JUDICIAL CONSTRUCTION.

The Michigan Fair Employment Practices Act was largely modeled after and based on policy considerations similar to the federal equal employment legislation; however, neither the Michigan Fair Employment Practices Act nor the Michigan Constitution binds Michigan courts to whatever the Congress enacts or the federal courts decide.

3. CIVIL RIGHTS — FEDERAL EQUAL EMPLOYMENT LEGISLATION — PRE-EMPTION.

The federal equal employment legislation does not pre-empt similar state legislation (42 USC 2000e-1, 2000h-4).

4. CIVIL RIGHTS — LONG-TERM DISABILITY — PREGNANCY.

Denial of long-term disability benefits for disabilities which are pregnancy related violates the antidiscrimination provisions of the Fair Employment Practices Act (MCL 423.303a; MSA 17.458[3a]).

5. CIVIL RIGHTS — PREGNANCY — JUDICIAL CONSTRUCTION.

The 1978 amendment by the Legislature which explicitly defined the exclusion of any right on the basis of pregnancy as being a form of sex discrimination did not retroactively broaden the scope of statutory prohibition against sex discrimination but rather merely made explicit the previous intent to include the limitation of pregnancy benefits within the definition of sex discrimination (MCL 37.2201[d]; MSA 3.548[201][d]).

6. CONTRACTS — LONG-TERM DISABILITY — PREGNANCY.

A contractual agreement to provide long-term disability benefits for an employee disabled by reason of any injury or sickness does not compel the conclusion that such benefits are not available as a result of pregnancy where the contractual language premises eligibility for benefits in terms of disability and speaks of pregnancy as being a disability.

*Dean, Dean, Segar, Hart & Schulman, P.C.* (by *Robert L. Segar),* for plaintiffs.

*Garan, Lucow, Miller, Seward, Cooper & Becker, P.C.* (by *Joseph Kochis),* for defendant.

Before: D. E. HOLBROOK, JR., P.J., and T. M.
BURNS and J. E. McDONALD,* JJ.

J. E. McDONALD, J. Plaintiffs represent a class of
female General Motors employees, all members of
the UAW, who were employed at various locations
throughout Michigan during the period from No-
vember 20, 1970, to March 31, 1977. Their employ-
ment was at all times governed by the terms of a
collective-bargaining agreement which included
provisions for various insurance benefits. By its
terms, the agreement provided for sickness and
accident benefits and for extended disability insur-
ance up to a maximum of 52 weeks for any one
period of disability. However, disability benefits
due to any one pregnancy or resulting childbirth
or complications was limited to six weeks.

Plaintiffs filed suit on November 20, 1973, claim-
ing that the provision limiting pregnancy benefits
constituted sex discrimination in violation of the
Fair Employment Practices Act (FEPA), 1955 PA
251, § 3a, as amended by 1966 PA 349; MCL
423.303a; MSA 17.458(3a), repealed by 1976 PA
453, § 804, effective March 31, 1977, and replaced
by the Civil Rights Act, MCL 37.2101 *et seq.;* MSA
3.548(101) *et seq.,* effective the same day, as well as
the Equal Protection Clause of the Michigan Con-
stitution, Const 1963, art 1, § 2. The relief sought
is damages in the amount of disability benefits
each class member would have received if she had
been absent for a disability arising from illness or
injury instead of a disability arising from preg-
nancy. After the case was certified as a class
action, plaintiffs filed a motion for summary judg-
ment as to liability only, on the basis of GCR 1963,
117.2(1). Defendant filed a cross-motion for sum-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

mary judgment based on the same court rule. By order entered June 22, 1981, the trial court granted plaintiffs' motion, finding that the provision limiting pregnancy benefits constituted sex discrimination in violation of the FEPA. In so holding, the court rejected defendant's alternative contention that pregnancy is not an "injury or sickness" included within the scope of the collective-bargaining agreement's disability insurance benefit provisions. Defendant appeals, by leave granted, the trial court's grant of summary judgment in favor of plaintiffs.

Initially, defendant argues that the prohibition against sex discrimination in employment contained in the FEPA was invalid under the title-object clause of the Michigan Constitution, Const 1963, art 4, § 24, because it was not reflected in the FEPA's title until the title was amended on October 5, 1972. Since plaintiffs represented a class of employees who worked for defendant during the period from November 20, 1970, to March 31, 1977, defendant's argument would, in effect, limit the scope of this class by prohibiting all claims arising before October 5, 1972. We do not believe such a limitation on the class of plaintiffs is proper.

The title-object clause of the Michigan Constitution provides:

"No law shall embrace more than one object, which shall be expressed in its title. No bill shall be altered or amended on its passage through either house so as to change its original purpose as determined by its total content and not alone by its title." Const 1963, art 4, § 24.

At the time the alleged discriminatory acts

herein occurred, the title to the FEPA, effective in 1955, provided:

"An act to promote and protect the welfare of the people of this state by prevention and elimination of discriminatory employment practices and policies based upon race, color, religion, national origin and ancestry; to create a state fair employment practices commission, defining its functions, powers and duties; and for other purposes."

However, the body of the act, having been amended by 1965 PA 344 and 1966 PA 349, also included within its prohibition discrimination based on age and sex, without an amendment to the title of the act. MCL 423.303a; MSA 17.458(3a). Subsequently, on October 5, 1972, the title to the FEPA was amended by 1972 PA 267 to include "age" and "sex" discrimination.

Defendant relies on the decision of a panel of this Court in *Hudak v Ex-Cell-O Corp,* 58 Mich App 135; 227 NW2d 251 (1975), wherein the Court affirmed a trial court's finding that the age discrimination provisions of § 3a were unconstitutional until its amendment on October 5, 1972, because they were not reflected in its title.

However, at least one judge of this Court, in the context of a sex discrimination claim, has found reason to question the holding in *Hudak:*

"I do not think that MCL 423.303a; MSA 17.458(3a), prior to its amendment in 1972, was unconstitutional under the title-object clause, Const 1963, art 4, § 24. The 1965 amendment to the body of the act was clearly within the title and object of the act. To the extent that *Hudak v Ex-Cell-O Corp,* 58 Mich App 135; 227 NW2d 251 (1975), holds otherwise, I think it mistaken. The title of an act need not serve as an index of all that the act contains. *People v Milton,* 393 Mich 234; 224 NW2d

266 (1974); *Hertel v Racing Comm'r*, 68 Mich App 191; 242 NW2d 546 (1976). The title-object clause was not intended to strike down this type of amendment." *Barczak v Rockwell International Corp*, 68 Mich App 759, 767; 244 NW2d 24 (1976) (CAVANAGH, J., *dissenting*).

This panel agrees with Judge CAVANAGH, and plaintiffs herein, that *Hudak* was based on an unnecessarily broad construction of the title-object clause. As stated in *Commuter Tax Ass'n v Detroit*, 109 Mich App 667, 671-672; 311 NW2d 449 (1981), where the Court rejected the contention that a 1981 amendment to the City Income Tax Act, MCL 141.501 *et seq.;* MSA 5.3194(1) *et seq.,* was violative of the title-object clause:

"Const 1963, art 4, § 24 is not offended if the substitute bill or amendment is for the same purpose as the original bill, if the substitute or amendment is in harmony with the objects and purposes of the original bill and germane thereto. *United States Gypsum Co v Dep't of Revenue*, 363 Mich 548; 110 NW2d 689 (1961); *Moeller v Wayne County Bd of Supervisors*, 279 Mich 505; 272 NW 886 (1937).

\*   \*   \*

"As the Supreme Court said in *Loomis v Rogers*, 197 Mich 265, 271; 163 NW 1018 (1917):

" 'An abridgment of all those sections is not essential to a sufficient title. While it contains various related provisions not directly indicated or enumerated in the title, under the construction of this constitutional requirement, as many times reviewed by this court, *if the act centers to one main general object or purpose which the title comprehensively declares, though in general terms, and if provisions in the body of the act not directly mentioned in the title are germane, auxiliary, or incidental to that general purpose, the constitutional requirement is met.*' " (Emphasis added.)

See also *Midland Twp v State Boundary Comm,*

401 Mich 641; 259 NW2d 326 (1977), *app dis* 435 US 1004; 98 S Ct 1873; 56 L Ed 2d 386 (1978), and *Sharp v Huron Valley Bd of Ed,* 112 Mich App 18; 314 NW2d 785 (1981).

We believe that the FEPA's title, as originally enacted, did focus on one general object or purpose: the prevention and elimination of discriminatory employment practices and policies. The declaration of this single broad purpose was sufficient to meet the requirements of Const 1963, art 4, § 24. The fact that the Legislature in 1965 decided to broaden the scope of the FEPA's antidiscrimination provisions by providing in the body of the act that sex and age were additional types of prohibited discrimination did not result in the body of the act being beyond the scope of the object stated in the title of the act, even though the act's original title enumerated several types of discrimination it intended to prohibit without mentioning sex or age. We find, therefore, that the provision against sex discrimination contained in § 3a of the FEPA did not violate the title-object clause of the Michigan Constitution prior to the title's amendment on October 5, 1972.

Defendant next contends that the provisions of the collective-bargaining agreement between General Motors and the UAW did not establish a classification based on sex which violated the FEPA during the period of November 20, 1970, through March 31, 1977. In support of this contention, defendant places great reliance on *General Electric Co v Gilbert,* 429 US 125; 97 S Ct 401; 50 L Ed 2d 343 (1976), *reh den* 429 US 1079; 97 S Ct 825; 50 L Ed 2d 799 (1977), *reh den* 429 US 1079; 97 S Ct 825; 50 L Ed 2d 800 (1977), where the Supreme Court held that an employer's disability plan providing sickness and accidental benefits to

all employees, but excluding disabilities arising from pregnancy, would not violate federal equal employment legislation, 42 USC 2000e-2(a)(1) (Title VII), absent a showing that the exclusion of pregnancy disability benefits was a "pretext" for discrimination against women. The Court found that the exclusion did not result in gender based discrimination. Rather, the Court viewed the exclusion as part of an insurance package in which there were no risks from which either men were protected and women were not, or vice versa.

Defendant also points to the Supreme Court's ruling in *Geduldig v Aiello,* 417 US 484; 94 S Ct 2485; 41 L Ed 2d 256 (1974), where the exclusion of pregnancy-related disabilities from employees' insurance coverage was held not to amount to discrimination under the Equal Protection Clause. Defendant goes on to argue that, since the Michigan FEPA was largely modeled after and based on policy considerations similar to Title VII, see *C Thorrez Industries, Inc v Civil Rights Comm,* 88 Mich App 704; 278 NW2d 725 (1979); *Civil Rights Comm v Chrysler Corp,* 80 Mich App 368; 263 NW2d 376 (1977), this Court should follow the reasoning of *Gilbert* and *Geduldig* and find that the limitation of pregnancy benefits in the collective-bargaining agreement covering plaintiffs' employment was not impermissible sex-based discrimination. We disagree.

Initially, we note that, in a recent decision, the Michigan Supreme Court stated that neither the FEPA nor the Michigan Constitution binds Michigan courts to whatever the Congress enacts or the federal courts decide. Rather, the question of whether a particular policy or rule of federal law should be incorporated into Michigan law should be decided as a particular issue arises. *Dep't of*

*Civil Rights ex rel Parks v General Motors Corp,*
412 Mich 610; 317 NW2d 16 (1982).

Several recent decisions of this Court have also
held that the *Gilbert* Court's narrow interpreta-
tion of federal legislation does not control this
state's construction of the FEPA or other fair
employment legislation and have specifically re-
jected its reasoning. In *Dep't of Civil Rights ex rel
Jones v Dep't of Civil Service,* 101 Mich App 295;
301 NW2d 12 (1980), a panel of this Court, in
reviewing the impact of *Gilbert* on the FEPA and
the successor Elliott-Larsen Civil Rights Act,
pointed out that no appellate court in Michigan
had considered the applicability of *Gilbert* on state
law and discussed with approval cases from other
jurisdictions which had held that they were not
compelled to construe their own state statutes in
the same manner as the Supreme Court had done
with the federal statute. 101 Mich App 302-303.
The Court went on to state:

"Although Title VII and the Michigan Civil Rights
Act are worded similarly, we are not compelled to
construe Michigan law in the same manner as Title
VII. Interpretations of Title VII need not control where
state law dictates a contrary result." (Footnote omitted.)
101 Mich App 303.

The Court also noted that Title VII, by its own
terms, does not pre-empt state law. 42 USC 2000e-
7; 42 USC 2000h-4; 101 Mich App 303, fn 13. See
also *Nickles v Brown City Community Schools,* 105
Mich App 708; 307 NW2d 707 (1981).

In each of these cases, panels of this Court held
that the exclusion or limitation of pregnancy-re-
lated disability benefits constituted sex-based dis-
crimination in violation of the FEPA. As explained
by the *Jones* Court:

"We find ample authority under Michigan's own civil rights legislation to support a conclusion that civil service violated state law in denying disability benefits to pregnant women.

\*  \*  \*

"Accordingly, we conclude that civil service's denial of pregnancy related disability benefits violated the anti-discrimination provisions contained in FEPA and its successor, the CRA. Pregnancy exclusion is not a sex neutral classification; pregnancy is a condition unique to women; therefore, any distinctions drawn on the basis of this feature works to deny women valuable rights solely on account of their sex. We conclude that 'pregnancy' discrimination is included within the meaning of 'sex' contained in the CRA and FEPA." 101 Mich App 303-304.

Based on the foregoing, we find no merit to defendant's contention that, under Michigan law, the limitation of pregnancy benefits is not sex-based discrimination.

Likewise, we find no merit in defendant's alternative argument that the Legislature acted improperly in adopting its 1978 amendment, MCL 37.2201(d); MSA 3.548(201)(d), which explicitly defines the limitation of pregnancy benefits as a form of "sex" discrimination. In enacting this amendment, the Legislature was not retroactively broadening the scope of statutory prohibitions on sex discrimination. Rather, it was merely making explicit its previous intent to include the limitation of pregnancy benefits within its definition of "sex discrimination". See concurring opinion of Judge KELLY in *Jones, supra,* 101 Mich App 305-308. That the Legislature did not deem it necessary to explicitly define pregnancy-related discrimination as an aspect of sex discrimination until the Supreme Court's highly questionable 1976 decision in *Gilbert,* is obvious.

Defendant's final argument is that plaintiffs did not establish that disabilities resulting from pregnancy or childbirth are disabilities resulting from injury or sickness under the collective-bargaining agreement. Defendant argues, relying on *Gilbert, supra,* that, because pregnancy is not a disability resulting from sickness or injury, the provision for six weeks of pregnancy benefits is not a limitation on regular disability coverage but instead is additional coverage to which pregnant employees would not have otherwise been entitled. Defendant reasons that this result follows as a matter of contract interpretation rather than from any construction of the FEPA. We disagree and hold that the trial court properly rejected defendant's contentions on this issue.

According to the terms of § 7(a) of Article II of the collective-bargaining agreement, an employee is eligible for benefits if he or she becomes wholly or continuously disabled as the result of any injury or sickness so as to be prevented thereby from performing any and every duty of his or her occupation and is under treatment by a licensed physician during the period of this disability. Eligibility for benefits is thus couched in terms of the presence or absence of a disability, not in terms of the nature or source of the disability. An employee who is giving childbirth, or is suffering complications as a result of giving childbirth, fits within this definition of "disabled" just as well as an employee who suffers from an illness or from injuries, whether accidental or self-inflicted. The fact that the parties used the terms "injury" and "sickness" to describe common sources of disability does not compel the conclusion that disabilities based upon these sources were the only ones for which benefits would be provided. Accordingly, the

language of § 7(a) of the collective-bargaining agreement itself supports the conclusion that pregnancy is one type of "disability" for which the parties negotiating the agreement intended to provide benefits.

Furthermore, and perhaps even more persuasive for plaintiffs' position, the language of § 7(e) of the parties' agreement, which provides for the six-week pregnancy benefits, begins with the language "For disability caused by * * *". The term "disability" is not independently defined for purposes of § 7(e), nor is pregnancy identified as a special condition distinguishable from the disabilities described in § 7(a). The failure to adopt a special definition excluding pregnancy from the scope of the term "disability" indicates to this Court that the parties intended to include pregnancy within the general definition of disability found in § 7(a). Section 7(e) is thus subject to, rather than independent of, the provisions of § 7(a) conferring disability benefits in cases of injury or sickness.

For these reasons, we hold that the trial court's grant of summary judgment to plaintiffs on the question of liability was proper.

Affirmed.