ANDERSON v OAKLAND COUNTY CLERK

Docket No. 74338. Argued June 15, 1984 (Calendar No. 11).—Order
entered June 19, 1984. Amendatory order entered June 21,
1984. Order denying other motions entered June 27, 1984.
(Reported *ante,* p 142.) Opinions filed August 20, 1984.

Harold R. Anderson, Carol D. Balzarini, Jon M. Gaskell, Bernard
R. Brown, Jr., and Kenneth U. Navarre, electors in Oakland
County, brought an action against the county clerk and board
of canvassers, for a declaratory judgment that 1983 PA 256,
which revised the boundaries of election districts for the Legis-
lature, was unconstitutionally enacted, and for an injunction
against the holding of special elections under it. The Secretary
of State and the Attorney General intervened as defendants.
The Oakland Circuit Court, George H. LaPlata, J., found that
the course followed in the enactment of the statute was uncon-
stitutional, and enjoined the elections. The defendants appeal.

In an opinion per curiam, signed by Chief Justice Williams
and Justices Kavanagh, Ryan, Brickley, Cavanagh, and Boyle,
the Supreme Court *held:*

1983 PA 256 was enacted in violation of Const 1963, art 4,
§ 24 and therefore is unconstitutional. House Bill 4481, which
became 1983 PA 256, was so altered and amended during the
time between its introduction and its approval that its original
purpose was changed in contravention of the provisions of the
Michigan Constitution.

1. A bill may not be altered or amended on its passage
through either house of the Legislature so as to change its
original purpose, as determined by the total content of the bill
and not by its title alone. In addition, no bill may be passed or
become law until it has been in the possession of each house for
at least five days. The purposes underlying the provisions are to
preclude hasty, last-minute legislation and to provide notice to
the public of legislation under consideration irrespective of
legislative merit.

2. In this case, House Bill 4481 was transformed from a

REFERENCES FOR POINTS IN HEADNOTES
[1-3] 25 Am Jur 2d, Elections §§ 13-17.
73 Am Jur 2d, Statutes § 49 *et seq.*

proposal to remove obsolete provisions pertaining to local elections to a proposal for reapportionment of the Legislature by introduction of entirely new and different subject matter without the required notice. As enacted, 1983 PA 256 bore no relation of any kind to original HB 4481.

Justice Levin concurred in a separate opinion.

1. 1983 PA 256 is unconstitutional. In substituting the subject matter of reapportionment for the subject matter of original House Bill 4481, 1983 PA 256 introduced an entirely new and different subject matter. There is, thus, no need to consider now whether germaneness or some other test or standard other than the change-in-purpose provision itself is the governing test or standard.

2. The inquiry under the constitution is whether the bill is in the possession of both houses of the Legislature for at least five days and whether there has been a change in purpose. If these constitutional requirements are satisfied, the constitution is not violated even if extensive substantive changes are adopted overnight with the attendant risk of hasty or snap judgment. Conversely, if the bill has not been in the possession of both houses for five days or there has been a change in purpose, the constitutional requirements are not satisfied even if it could be shown that the purpose of avoiding hasty judgment and providing publicity had been fully satisfied in some other way. Any other construction of the constitution would expose many enactments to judicial inquiry regarding the extent of the publicity and the adequacy of legislative consideration.

3. Although it is arguable that this action should have been commenced earlier, the Court's order as amended will not preclude the orderly conduct of the 1984 elections. It would not be appropriate to allow the 1984 elections for the House to be carried out in legislative districts prescribed in an unconstitutional law where that can be avoided and an orderly election conducted.

Affirmed.

OPINION OF THE COURT

1. CONSTITUTIONAL LAW — AMENDMENT OF BILLS — APPORTIONMENT OF LEGISLATURE.

1983 PA 256, which purported to reapportion the Legislature, was unconstitutional because it was so altered and amended from the time it was introduced as a bill of housekeeping amendments of the Election Law until it was approved that its original purpose was changed, and because it was passed by the

Legislature during a regular session without having been in the possession of each house for at least five days (Const 1963, art 4, §§ 24, 26).

CONCURRING OPINION BY LEVIN, J.

2. CONSTITUTIONAL LAW — AMENDMENT OF BILLS — APPORTIONMENT OF LEGISLATURE.

*1983 PA 256, which purported to reapportion the Legislature, was unconstitutionally enacted because it was so altered and amended from the time it was introduced as a bill of house-keeping amendments of the Election Law until it was approved that its original purpose was changed, and because it was passed by the Legislature during a regular session without having been in the possession of each house for at least five days (Const 1963, art 4, §§ 24, 26).*

3. CONSTITUTIONAL LAW — AMENDMENT OF BILLS — APPORTIONMENT OF LEGISLATURE.

*Where a bill has been in the possession of both houses of the Legislature for at least five days and there has not been a change in the purpose of the bill, it satisfies constitutional requirements for amendment and passage, even if extensive substantive changes are adopted overnight with the attendant risk of hasty or snap judgment; if it has not been in the possession of both houses for five days or there has been a change in purpose, the constitutional requirements are not satisfied even if it could be shown that the purpose of avoiding hasty judgment and providing publicity had been fully satisfied in some other way (Const 1963, art 4, §§ 24, 26).*

*Foster, Swift, Collins & Coey, P.C.* (by *Theodore W. Swift* and *David W. McKeague),* for the plaintiffs.

Oakland County Corporation Counsel (by *Gordon R. Wyllie,* Assistant Corporation Counsel) for the defendants.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Gary P. Gordon* and *Richard P. Gartner,* Assistant Attorneys General, for intervening defendants Secretary of State and Attorney General.

PER CURIAM. The constitutional right of the people to have the Legislature act in accordance with the constitution is the issue in this case. More specifically, the issue is whether the transformation and passage between 11:30 p.m. December 21, 1983, and 1:35 a.m. December 22, 1983, of House Bill 4481 from a measure which had from April 27 to December 21 provided that county clerks will be relieved of certain ministerial duties and amending legislation relative to Detroit income taxes to a measure reapportioning the Legislature violates art 4, § 24 of the Michigan Constitution. Article 4, § 24 provides that the original purpose of a bill, as determined by its total content and not by its title alone, shall not be altered or amended as it passes through either the House of Representatives or the Senate. This Court concludes that art 4, § 24 was violated.

The plaintiffs in the case at bar filed a lawsuit contending, among other things, that the methods used in passing 1983 PA 256 violated this constitutional provision. The Oakland Circuit Court agreed, finding 1983 PA 256 in conflict with the change of purpose clause in art 4, § 24 and therefore unconstitutional. We granted leave to appeal prior to decision by the Court of Appeals because of the constitutional importance of the issue and the need for its timely and final resolution.

On June 19, 1984, we issued the following order:

"This cause having been brought to this Court by appeal prior to decision by the Court of Appeals and having been argued by counsel and due deliberation having been had thereon by the Court, it is hereby ordered that the judgment of the Circuit Court for the County of Oakland is affirmed, and this Court's stay of the effectiveness of that judgment is vacated. The Court holds that 1983 PA 256 is unconstitutional as in viola-

tion of the second sentence of Const 1963, art 4, § 24 which provides 'No bill shall be altered or amended on its passage through either house so as to change its original purpose as determined by its total content and not alone by its title.' The Court further holds that nominating procedures heretofore conducted under 1983 PA 256, including the special primary election held June 5, 1984, are invalid.

"It is further ordered that, in the absence of the enactment of a law providing otherwise and given immediate effect before July 10, 1984, (a) nomination and elections for the Legislature will be conducted within districts as adopted by this Court in *In re Apportionment of State Legislature—1982,* 413 Mich 96 (1982), and (b) the date for qualifying for nomination for election to the Legislature shall be extended to Tuesday, July 10, 1984.

"Because of the urgency of this question, pursuant to GCR 1963, 866.3(c) the Clerk is directed to issue this judgment order forthwith. The opinion of the Court will follow."[1]

---

[1] On June 21, 1984 we amended this order and issued the following order:

"On order of the Court, the motion by defendants-appellants Secretary of State and Attorney General for amendment of this Court's order of June 19, 1984, is immediately considered, plaintiffs-appellees having responded that they have no objection to the relief requested in the motion. This Court grants the requested relief and the order of June 19, 1984, is therefore amended to provide as follows:

"I. The date for qualifying for nomination to the Michigan House of Representatives shall be June 27, 1984, at 4:00 p.m.

"II. A person filing a petition for election to the Michigan House of Representatives shall not be allowed to withdraw the petition after June 29, 1984, at 12:00 noon.

"III. Challenges to the sufficiency of a petition for election to the Legislature shall be filed no later than June 29, 1984, at 12:00 noon.

"IV. Since it may be necessary to make changes in precinct boundaries in some instances to implement the Court's order, the clerks of a city or township are hereby authorized to make necessary administrative changes with approval of the State Director of Elections.

"V. Candidates for delegate to county political conventions who have previously filed petitions shall be placed on the ballot in the precinct in which they reside.

"VI. Minor political parties shall certify nominees for the office of state representative to Secretary of State or county clerk, if applicable, no later than August 6, 1984, at 5:00 p.m.

"CAVANAGH, J., not participating."

I

A

On April 27, 1983, House Bill 4481 was introduced in the Michigan House of Representatives. It encompassed nine pages devoted to amending the Michigan Election Law.[2] The bill eliminated the requirement that county clerks deliver absentee ballots to city and township clerks in school districts holding late millage elections and eliminated certain provisions relating to a special election on income taxes held in the City of Detroit.[3] The Legislative Service Bureau, which prepares the Daily Digest each day that bills are introduced in the House or Senate, described the bill as follows:

"Elections; special elections; city income tax; eliminate obsolete provisions for 1981 special election".

The bill was then referred to the House Committee on Elections as part of the normal legislative process.

On November 8, 1983, the House Committee on Elections reported House Bill 4481 out of committee to the full House of Representatives. The next day the House Legislative Analysis Section prepared an analysis of the bill describing its provi-

---

[2] 1954 PA 116.

[3] As introduced, House Bill 4481 was entitled:

"A bill to amend sections 497, 498, 639, and 714 of Act No. 116 of the Public Acts of 1954, entitled 'Michigan election law,' sections 497 and 639 as amended by Act No. 61 of the Public Acts of 1981, section 498 as amended by Act No. 2 of the Public Acts of 1982, and Section 714 as amended by Act No. 140 of the Public Acts of 1981, being sections 168.497, 168.498, 168.639, and 168.714 of the Michigan Compiled Laws; and to repeal certain acts and parts of acts."

sions as "housekeeping" changes in the Election Law. The bill still retained the same title as it possessed on introduction and had the same content. The House Committee on Elections recommended that the bill pass, and it was referred to the order of Second Reading of Bills[4] in compliance with another provision of art 4, § 26 which mandates that "[e]very bill shall be read three times in each house before the final passage thereof".

House Bill 4481 was read a second time on November 30, 1983. Representative Sitz moved that the bill be placed on the order of Third Reading of Bills. The motion prevailed.[5] Once again the bill's title and content were unchanged.

On December 13, 1983, the House of Representatives heard the third reading of the bill. The same day, the bill passed by a unanimous vote and was given immediate effect.[6]

The Michigan Senate received House Bill 4481 on December 14, 1983. The bill was read a first and second time by title and was referred to the Committee on Senate Administration and Rules and Elections.[7] The title and content of House Bill 4481 remained unchanged.

B

While House Bill 4481 was wending its way through the legislative process, the Legislature was considering how best, in the wake of this Court's injunction to it in *In re Apportionment of*

---

[4] 1983 House Journal 2361.

[5] 1983 House Journal 2551.

[6] 1983 House Journal 2600–2601.

[7] 1983 Senate Journal 2344.

*State Legislature—1982,* 413 Mich 96; 321 NW2d 565 (1982),[8] to reapportion itself.

In the course of the search for an appropriate "vehicle bill" several bills were available but were discarded. Senate Bill 3 would have apportioned the House of Representatives and the Senate. This bill was passed by the Senate on December 1, 1983.[9] Senate Bill 3 was not, however, employed as the vehicle bill for reapportionment.

House Bill 4045, like Senate Bill 3, directly concerned the reapportionment of the Legislature. This bill was reported by the House Committee on Elections to the full House of Representatives on December 14, 1983. However, House Bill 4045 was not employed as the "vehicle" bill.

On December 21, 1983, House Bill 4481, still before the Senate as a fairly innocuous piece of legislation designed to amend the Michigan Election Law, became the "vehicle bill" for reapportionment.

At 11:30 p.m. on December 21, 1983, the Senate was called to order. Senator Corbin moved that the Committee on Senate Administration and Rules and Elections be discharged from further consideration of House Bill 4481, which at this point retained its original title and content. The motion prevailed. Senator Corbin then moved that the rules be suspended and that House Bill 4481 be placed on immediate passage. This motion also prevailed and the bill was read a third time. Senator Faust then offered as a substitute the bill

---

[8] We stated in *In re Apportionment of State Legislature—1982:*

"The redistricting and apportionment plan resulting from this Court's determination will stand until the people act, or it is changed by the collective action of the other two branches of this government, composed of persons who are the most immediate representatives of the people." 413 Mich 140.

[9] 1983 Senate Journal 2280.

which, with minor changes, became 1983 PA 256. Whereas House Bill 4481 had been originally described as "[e]lections; special elections; city income tax; eliminate provisions for 1981 special election", 1983 House Journal 2698 described the new substitute bill as follows:

"A bill to divide the state into 38 senatorial and 110 representative districts; to prescribe certain powers and duties of the secretary of state; to make appropriations to the department of state; and to provide for the expenditure of the appropriations."

Senator McCollough raised the point of order that the substitute was not germane to the bill because the bill related to special elections and a city income tax election while the substitute did not. Whereas the original bill related to minor "housekeeping" changes in the election law, the substitute was a major legislative reapportionment bill. Senator Cropsey, after the passage of the bill, also raised the question of the substitute bill's "constitutional infirmities". The President Pro Tempore of the Senate ruled that the substitute was germane to the bill. The bill was then passed. The Senate adjourned at 11:54 p.m.[10]

The House of Representatives convened at 12:01 a.m. on December 22, 1983. It was noted that the Senate had returned a substitute House Bill 4481. The Speaker of the House of Representatives announced that under House Rule 38 the bill would lie over for one day. Representative Forbes moved that House Rule 38 be suspended and the motion prevailed. Representative Bryant proposed some amendments to the Senate substitute, but the amendments were not adopted. The substitute was put to a vote and it was passed by the House of

[10] 1983 Senate Journal 2406–2407.

Representatives. The House also agreed to the title as amended by the Senate. The bill was given immediate effect and was referred to the clerk for enrollment, printing, and presentation to the Governor. After some unrelated legislative action, the House of Representatives adjourned at 1:35 a.m. on December 22, 1983.[11]

On December 29, 1983, the Governor signed Substitute House Bill 4481, the bill becoming 1983 PA 256. The act provided that the reapportionment of the House of Representatives would take effect on April 1, 1984, while the reapportionment of the Senate would take effect on January 1, 1986.

### C

The instant lawsuit arose upon the resignation of Representative Rudy Nichols on February 6, 1984. At the time of his resignation, Representative Nichols represented the 20th House District, which then included Waterford and White Lake Townships. On April 2, 1984, the Governor issued a writ of election to fill the vacancy. Although the writ specified that there was to be a primary election on June 5, 1984, and a special general election on August 7, 1984, no primary was ultimately scheduled because only one Republican and one Democratic candidate filed nominating petitions for the office. The Secretary of State decreed that the election to be held for the office of Representative of the 20th District would be for the district as defined in 1983 PA 256. While the new 20th District retained Waterford Township, Independence Township had replaced White Lake Township as a constituent part of the district.

---

[11] 1983 House Journal 2698–2700, 2712.

Plaintiffs, who claim to be registered voters in parts of the 20th District as redrawn by 1983 PA 256 and as it existed prior to the effective date of that legislation, filed a suit in Oakland Circuit Court on May 11, 1984. Among other things they asked the court to declare that 1983 PA 256 was invalid in that its passage contravened the dictates of art 4, § 24 of the Michigan Constitution. The court agreed with the position taken by the plaintiffs and judgment was entered declaring 1983 PA 256 to be invalid.

As noted earlier in this opinion this Court granted leave to appeal prior to decision by the Court of Appeals. On June 19, 1984, we issued an order affirming the trial court.

## II

In most of the situations in which this Court has been asked to interpret whether legislation comported with the requirements of Const 1963, art 4, § 24 and its predecessors, we have confronted claims that the legislation ran afoul of the *first* sentence of this section:

"No law shall embrace more than one object, which shall be expressed in its title".

While repeated references have been made in the arguments and the briefs of the parties, and indeed in this opinion, to the nature of and changes in the title of 1983 PA 256, let us emphasize at the outset that the instant case does not involve a "title-object" problem. Indeed the title as ultimately agreed on by the Legislature may fairly be said to well express the final object of the legislation, that is, reapportionment. Rather, we make reference to the title of this act as it made its way

through the legislative process solely in an effort to satisfactorily address the question really at issue—whether the bill in question was altered or amended on its passage through the Legislature so as to change its original purpose. Examination of both the title and content of the bill at various stages of legislative progress is necessary to aid in that inquiry.

## III

In ruling that 1983 PA 256 had been enacted in violation of art 4, § 24 of the constitution, the trial court opined:

"It is clear to this court that from 1950 to the Constitutional Convention of the 1960's, it was the purpose of those persons reforming the notice requirement procedures for enacting new laws to protect the public's right to know what was being legislated. This right to know is basic to the legislative process and this court cannot ignore actions taken which are in contravention to that principle.

"This court adopts the language of Justice MORSE in *Sackrider v Saginaw County Board of Supervisors,* 79 Mich 59 [44 NW 165 (1889)], to the effect that it is the duty of courts to insure that provisions of the state constitution are obeyed.

"This court rejects the argument of defendants regarding substantial compliance and finds no support for the argument that a bill providing for reapportionment of the Legislature is germane to the original act which was in the nature of a housecleaning of the Election Code.

\* \* \*

"This court further finds that 1983 PA 256 is in conflict with the change of purpose clause of the 1963 state constitution and is therefore unconstitutional and of no force."

By comparison, in *Sackrider v Saginaw County Board of Supervisors, supra,* this Court was called upon to decide whether the substitution of a bill, after the first fifty days of the legislative session had expired, for a prior bill introduced within the fifty-day period constituted the introduction of a "new bill" in violation of art 4, § 28 of the constitution. Specifically, the original bill provided for the discontinuance of a portion of a road in Midland County. The substitute bill, however, provided for the construction of roads in Saginaw County. The defendants admitted that the second bill was a substitute, but contended that the subject matter of the first bill was germane to the substitute bill which was ultimately passed. The trial judge found that the act was invalid. This Court affirmed. Justice MORSE, writing for the Court, stated considerations which we find equally applicable in the present case which comes to us almost a century later:

"If the constitutional provision can ever be evaded or violated by the reporting and passing of a substitute for an original bill, it certainly has been evaded and violated in this case. And if this legislation can be upheld it would seem that the constitutional provision above quoted is worthless to prevent the evil against which it is manifestly directed. If a new bill can be reported as a substitute for a bill, the subject-matter of which has no connection with or relation in the remotest degree to the subject-matter of such new bill under the guise of a substitute, then it is difficult to perceive the use or value of this constitutional provision." 79 Mich 65.

The appellants rely, in the main, on two prior decisions of this Court, *Moeller v Wayne County Board of Supervisors,* 279 Mich 505; 272 NW 886 (1937), and *United States Gypsum Co v Dep't of Revenue,* 363 Mich 548; 110 NW2d 698 (1961).

*Moeller* is distinguishable on several grounds, and when the *United States Gypsum* test is applied to the instant case the legitimacy of the plaintiffs' claims that 1983 PA 256 is invalid becomes manifest.

In *Moeller* this Court was asked to decide, *inter alia,* whether 1933 PA 84, an amendment to 1851 PA 156, violated Michigan Const 1908, art 5, § 22 in that it had been altered or amended in its passage through the Legislature so as to change its original purpose. As originally introduced, the bill in question in *Moeller* dealt with the pay of supervisors, while as finally passed it also concerned the duties of supervisors with regard to contracts and the holding of other public offices. This Court upheld the validity of the legislation after first stating:

"In determining whether or not a bill has been 'altered or changed' we are not limited by the title or contents of the bill as introduced into either branch of the legislature, but to the title of the act which is being amended." 279 Mich 512.

We concluded:

"We are of the opinion that the provisions as are now found in the act are comprehended and included in the title of the original act. The amended act relates to the powers and duties of boards of supervisors and is not invalid upon that ground." 279 Mich 514.

By way of contrast with the situation in *Moeller,* although House Bill 4481 was originally cast as an amendment of the Election Law, when it was finally passed and became 1983 PA 256 it amended nothing, but was itself a distinct entity. Thus there

is no title of the amended act to use as a measuring device.

Further, at the time *Moeller* was decided, Michigan Const 1908, art 5, § 22 simply provided in relevant part that:

"No bill shall be altered or amended on its passage through either house so as to change its original purpose."

As the quoted record of the Constitutional Convention demonstrates, however, the present constitution has been "tight[ened]" by adding the phrase "as determined by its total content and not alone by its title" to art 4, § 24.[12] Thus, concentration of analysis on title alone is now inappropriate. Reference must also be made to the contents of the bill.

In *United States Gypsum Co, supra,* this Court upheld the constitutionality of 1953 PA 150 (commonly known as the business activities tax) against a claim that there had been a violation of the "five-day rule" because a substitute bill which was ultimately passed had not been before the

[12] "Mr. Kuhn: * * * Toward the end [of the proposal], we use this language starting on line 14, 'No bill shall be altered or amended on its passage through either house so as to change its original purpose as determined by its total content and not alone by its title.' Once again, if you will read the Address to the People of the 1908 convention, they wanted this air tight so the people were aware of what was to be before the legislature when a bill was up so they have some idea. This is only going a step further to make it tight so the people will have some idea of what is in a particular bill and so they can't change the purpose." 2 Official Record, Constitutional Convention 1961, Committee Proposal 105, p 2335.

The "step further" alluded to by delegate Kuhn was to add the phrase "as determined by its total content and not alone by its title" to the existing language of Michigan Const 1908, art 5, § 22, which provided in relevant part:

"No new bill shall be altered or amended on its passage through either house so as to change its original purpose."

House of Representatives for five days. This Court stated:

"Appellant contends that the substitute was substantially different from the original, and that the procedure employed by the legislature defeated the public-knowledge purpose of article 5, §§ 22 and 23 (Const 1908). The public-knowledge purpose is not spelled out in the constitutional requirement—and may have been fulfilled (for all this record shows) beyond the greatest expectations of 1908. Differences there certainly were, as we have indicated, but the question remains as to whether or not there was sufficient similarity of purpose as to be described as germane.

"The question of when an amendment of substitute is germane to the original bill is a difficult one. See 158 ALR 421, annotation. The test is whether or not the change (by either method) represented an amendment or extension of the basic purpose of the original, or the introduction of entirely new and different subject matter. 1 Sutherland, Statutory Construction (3d ed), § 805.

"If the actual situation revealed the latter purpose, this Court has not hesitated to hold void legislation enacted to evade the procedural requirements which the Constitution places on legislation. *Sackrider v Saginaw County Board of Supervisors,* 79 Mich 59 [44 NW 165 (1889)]; *Attorney General v Detroit & Saline Plank Road Co,* 97 Mich 589 [56 NW 943 (1893)].

"Where, however, the changes fall within the general purpose of the original bill, or are extensions of it, the Court has termed them germane.

\*   \*   \*

"Turning directly to the issue of germaneness, we find that the Higgins substitute for the original version, House Bill No 353, was, like the original, (1) a bill to raise revenue; (2) a tax on income; (3) a bill to set up machinery for collecting and enforcing same. These major purposes were all within the original objectives of the bill as first introduced and as described in the title of the original version of the bill." 363 Mich 554, 556.

By contrast, in the instant case, House Bill 4481 as finally passed served none of the objectives of the original bill. The only similarity between original House Bill 4481 and the substitute bill as enacted was its number and the enacting clause. In sum, House Bill 4481 as passed reflected neither the purposes contained in the act purportedly amended, *Moeller, supra,* nor those of the original bill for which it was substituted, *United States Gypsum Co, supra.* Appellants' reliance on those cases is therefore misplaced.

## IV

We conclude that two provisions of the Michigan Constitution require the finding that 1983 PA 256 is unconstitutional: the alteration of purpose provision and the five-day rule. These provisions provide as follows: 1) "[n]o bill shall be altered or amended on its passage through either house so as to change its original purpose as determined by its total content and not alone by its title", Michigan Const 1963, art 4, § 24, and 2) "[n]o bill shall be passed or become a law at any regular session of the legislature until it has been printed or reproduced and in the possession of each house for at least five days". Article 4, § 26. These are not recent provisions. A long history underscores an intent through these requirements to preclude last-minute, hasty legislation and to provide notice to the public of legislation under consideration irrespective of legislative merit.[13]

The five-day rule and the change of purpose

---

[13] The Constitution of 1850 provided in art 4, § 28 that:

"No new bill shall be introduced into either house during the last three days of the session, without the unanimous consent of the house in which it originates."

This provision was repealed and replaced in 1860 with the following:

provision were contained in the same article and section of the Constitution of 1908. Const 1908, art 5, § 22. It is clear that the function of the change of purpose provision, both in the Constitution of 1908[14] and as modified in the Constitution of 1963,[15] is to fulfill the command of the five-day rule.

Whether measured by the title of the act or by the title and contents of the act, the five-day rule could be rendered ineffective without a change of purpose provision. It is equally clear that a change of purpose rule standing alone would be meaningless, because any time the purpose of a bill was changed it would be a new bill which could be passed immediately. In sum, the alteration of purpose provision operates as an ultimate limitation to prevent evasion of the five-day rule.

The only similarities between original House Bill 4481 and the substitute bill were the numbers and the clause which read "The People of the State of Michigan enact". There was a clear violation of art 4, § 24, an evasion and nullification of the five-day rule.

---

"No new bill shall be introduced into either house of the Legislature after the first fifty days of a session shall have expired."

[14] This function was clearly expressed by the framers of the constitution in connection with Const 1908, art 5, § 22:

"This is a new section. It was inserted to prevent hasty and careless legislative action, also, to deal effectively with so-called snap legislation. The provision that no bill shall be passed until it has been printed and in the possession of each house for five days means much greater publicity in legislative proceedings. Time is thus provided whereby the people may become acquainted with proposed legislation and to petition, or remonstrate, before a bill is passed. It is believed that this provision will measurably improve the tone of legislative action. * * * The provision that no bill shall be *altered* on its passage so as to change its original purpose is included so that by no possibility can the publicity secured by the five day rule be nullified or evaded". 2 Official Record, Constitutional Convention 1907, p 1422. (Emphasis in the original.)

[15] See fn 12.

## V

We are persuaded that the two-hour-and-five-minute metamorphosis of House Bill 4481 from a fairly pedestrian proposal to alleviate some of the burdens of local clerks and to remove some obsolete provisions concerning an election regarding the Detroit Income Tax into an entirely new means for reapportionment of the Legislature constituted "the introduction of entirely new and different subject matter", *United States Gypsum Co, supra,* p 554, in the face of a clear constitutional provision which prohibited the action taken. 1983 PA 256 was enacted in violation of Michigan Const 1963, art 4, § 24 and is, therefore, invalid.

## VI

In making our ruling in this case, we ascribe no improper intentions or motives to the Legislature. The passage of 1983 PA 256 appears to have been the culmination of repeated attempts to find an acceptable formula for the Legislature to use to reapportion itself. It is clear, however, that the method employed to effect that purpose transgressed the proscription of art 4, § 24 of our constitution. 1983 PA 256 bore no relationship of any kind to original HB 4481. That transgression renders 1983 PA 256 invalid.

The language of Justice Morse in *Sackrider,* p 72, bears repeating here:

"We cannot shut our eyes to this record,—to that which he who runs may read,—for the purpose of saving this or any other statute. The evil consequences, if any, to follow our decision in this case, as a precedent applied to other existing statutes, will not be of our creation, but the necessary result of such legislation as this before us, if the Constitution is to be regarded or

respected in the hands of its keepers. Such considerations as the effect of our holding upon other laws that may have been passed in the same way cannot bear weight against our plain duty in as clear a case as this."

Appellants' other contentions of error are without merit. The judgment of the Oakland Circuit Court is affirmed.

WILLIAMS, C.J., and KAVANAGH, RYAN, BRICKLEY, CAVANAGH, and BOYLE, JJ., concurred.

LEVIN, J. *(concurring).* On June 19, 1984, this Court entered an order,[1] with opinion to follow,

---

[1] The June 19, 1984 order reads as follows:

"This cause having been brought to this Court by appeal prior to decision by the Court of Appeals and having been argued by counsel *and due deliberation having been had thereon by the Court,* it is hereby ordered that the judgment of the Circuit Court for the County of Oakland is affirmed, and this Court's stay of the effectiveness of that judgment is vacated. The Court holds that 1983 PA 256 is unconstitutional as in violation of the second sentence of Const 1963, art 4, § 24 which provides 'No bill shall be altered or amended on its passage through either house so as to change its original purpose as determined by its total content and not alone by its title'. The Court further holds that nominating procedures heretofore conducted under 1983 PA 256, including the special primary election held June 5, 1984, are invalid.

"It is further ordered that, in the absence of the enactment of a law providing otherwise and given immediate effect before June 10, 1984, (a) nomination and elections for the Legislature will be conducted within districts as adopted by this Court in *In re Apportionment of State Legislature-1982,* 413 Mich 96 (1982), and (b) the date for qualifying for nomination for election to the Legislature shall be extended to Tuesday, July 10, 1984.

"Because of the urgency of this question, pursuant to GCR 1963, 866.3(c) the Clerk is directed to issue this judgment order forthwith. The opinion of the Court will follow."

On June 21, 1984, the following order was entered:

"On order of the Court, the motion by defendants-appellants Secretary of State and Attorney General for amendment of this Court's order of June 19, 1984, is immediately considered, plaintiffs-appellees having responded that they have no objection to the relief requested in the motion. This Court grants the requested relief and the order of June 19, 1984, is therefore amended to provide as follows:

"I. The date for qualifying for nomination to the Michigan House of Representatives shall be June 27, 1984, at 4:00 p.m."

stating that 1983 PA 256 was unconstitutional because the bill that became Act 256 had been altered or amended on its passage to change its original purpose in violation of Const 1963, art 4, § 24.[2]

I

Act 256 divides the state into 38 senatorial and 110 representative districts and constitutes a reapportionment of the Legislature that differs from the plan approved by this Court on May 21, 1982. *In re Apportionment of State Legislature—1982,* 413 Mich 96, 212; 321 NW2d 565 (1982).[3]

Act 256 originated as House Bill 4481. As introduced and passed by the House, the bill would have amended provisions of the Election Law concerning a special election on income taxes held in Detroit in 1981 and the delivery of absentee bal-

"II. A person filing a petition for election to the Michigan House of Representatives shall not be allowed to withdraw the petition after June 29, 1984, at 12:00 noon.

"III. Challenges to the sufficiency of a petition for election to the Legislature shall be filed no later than June 29, 1984, at 12:00 noon.

"IV. Since it may be necessary to make changes in precinct boundaries in some instances to implement the Court's order, the clerks of a city or township are hereby authorized to make necessary administrative changes with approval of the State Director of Elections.

"V. Candidates for delegate to county political conventions who have previously filed petitions shall be placed on the ballot in the precinct in which they reside.

"VI. Minor political parties shall certify nominees for the office of state representative to Secretary of State or county clerk, if applicable, no later than August 6, 1984, at 5:00 p.m.

"CAVANAGH, J., not participating."

[2] "Sec. 24. No law shall embrace more than one object, which shall be expressed in its title. No bill shall be altered or amended on its passage through either house so as to change its original purpose as determined by its total content and not alone by its title." Const 1963, art 4, § 24.

[3] The plan approved by this Court is set forth in Public and Local Acts—Michigan, Session of 1983, pp 983 ff.

lots in school district elections. The Senate received the bill on December 14, 1983, and it was referred to a committee.

Shortly before midnight on December 21, 1983, the Senate convened and took up House Bill 4481, and amended it to provide for legislative reapportionment. The title and all the provisions of the bill were eliminated in their entirety. A new title and provisions concerning legislative reapportionment were substituted, and the bill was thereupon approved by the Senate. Shortly after midnight, the House of Representatives convened. Substitute House Bill 4481 was transmitted to the House, which approved it before adjourning at 1:35 a.m. on December 22, 1983.

Subsequently, the Governor signed the bill, and it became Act 256. As so approved by the Legislature and the Governor, the only aspects of original House Bill 4481 to be found in substitute House Bill 4481, which became Act 256, were its number (4481) and the constitutionally required[4] enacting clause: "The People of the State of Michigan enact".

## II

The constitution provides that no bill shall be passed or become law at a regular session of the Legislature until it has been printed or reproduced and is in the possession of each house for at least five days.[5] The purpose of this limitation is "to

---

[4] Const 1963, art 4, § 23.

[5] "Sec. 26. No bill shall be passed or become a law at any regular session of the legislature until it has been printed or reproduced and in the possession of each house for at least five days. Every bill shall be read three times in each house before the final passage thereof. No bill shall become a law without the concurrence of a majority of the members elected to and serving in each house. On the final passage of bills, the votes and names of the members voting thereon shall be entered in the journal. Const 1963, art 4, § 26.

prevent hasty and careless legislative action", "to
deal effectively with so-called snap legislation",
and to require "greater publicity in legislative
proceedings".[6] To safeguard against those provi-
sions being evaded by an amendment of a bill that

[6] The following appears in the Record of the Constitutional Conven-
tion of 1907:

"This is a new section. It was inserted to prevent hasty and careless
legislative action, also, to deal effectively with so-called snap legisla-
tion. The provision that no bill shall be passed until it has been
printed and in the possession of each house for five days means much
greater publicity in legislative proceedings. Time is thus provided
whereby the people may become acquainted with proposed legislation
and to petition, or remonstrate, before a bill is passed. It is believed
that this provision will measurably improve the tone of legislative
action. When the legislature is convened in special session the revi-
sion limits its action to those matters expressly stated in the gover-
nor's proclamation. This wisely limits the sphere of action of the
legislature, in special session; and the governor's proclamation is
notice to the public of the work which the legislature can lawfully
undertake. The provision that no bill shall be *altered* on its passage
so as to change its original purpose is included so that by no possibil-
ity can the publicity secured by the five day rule be nullified or
evaded." 2 Official Record, Constitutional Convention 1907, p 1422.
(Emphasis in the original.)

The following appears in the Record of the Constitutional Conven-
tion of 1961:

"The committee is of the opinion that this section should be
retained and strengthened somewhat. The first sentence of the section
[the five-day provision] is a preventive against hasty and careless
legislation. It allows publicity to be given to pending legislative action
so the electorate becomes informed. This provision does not prevent
unprinted amendments, but the last sentence of the section prevents
any change in original purpose.

* * *

"The last sentence [the change-in-purpose provision] was first found
in the 1908 constitution. The provision that no amendment is allowed
which would change a bill's original purpose is to preclude the
possibility that the publicity insured by the 5 day provision will not
be nullified or evaded.

"The new language strengthens the provision. By reference to the
title alone, a title too broad would circumvent the provision confining
bills to their original purpose.

"The committee is of the opinion that the 'original purpose' provi-
sion along with the requirement that bills must be printed for 5 days
prior to passage is a limitation which should be retained. Action
taken in haste is likely to prove itself not in the best interests of the
people." 2 Official Record, Constitutional Convention 1961, pp 2334-
2335.

has been in the possession of one or both houses for the requisite time,[7] the constitution further provides that "no bill shall be altered or amended on its passage through either house so as to change its original purpose as determined by its total content and not alone by its title".[8]

The plaintiffs commenced this action, claiming that Act 256 is unconstitutional.[9] The circuit court so held, and this Court granted leave to appeal prior to decision by the Court of Appeals.

The Attorney General, relying on *Moeller v Wayne County Board of Supervisors,* 279 Mich 505, 512, 514; 272 NW 886 (1937), argues that Act 256 is constitutional because its substance—apportionment—is germane to elections and House Bill 4481 as originally introduced provided for amendments to the Election Law. *Moeller* concerned 1933 PA 84, which amended § 30 of an earlier act.[10] In rejecting the contention that Act 84 vio-

---

[7] See fn 6.

[8] See fn 2.

[9] Plaintiffs are registered voters in the 20th House District and seek to enjoin a special general election in that district as constituted under Act 256 otherwise required to be held on August 8, 1984. No primary was required because only one Republican and one Democratic candidate filed.

[10] Section 30 concerned the compensation of members of a board of supervisors. As introduced, the amendatory act concerned only compensation. As enacted, it contained provisions not in the original bill that precluded members of a board of supervisors from receiving any civil appointment within or from any county authority (except where authorized by city or village charter) and from being interested in any contract or business transaction with the county. See 1933 PA 84, amending 1929 CL 1152.

In *Moeller* the bill, as introduced and enacted, amended only one section of the original act and there was thus no change in the title. The added provisions, precluding a member of a board of supervisors from obtaining additional remuneration from the county either by holding other county office or being interested in county contracts, seem to have been substantially related to the provisions of the original amendatory bill and to § 30 of the act being amended (establishing the compensation of members of a board of supervisors), which both the original and enacted bill purported to amend.

lated the change-in-purpose provision of the 1908
Constitution, this Court stated that it was "not
limited by the title or contents of the bill as
introduced into either branch of the legislature,
but to the title of the act which is being amended",
and that it was of the opinion "that the provisions
as are now found in the act are comprehended and
included in the title of the original act. The
amended act relates to the powers and duties of
boards of supervisors and is not invalid upon that
ground".

*Moeller* concerned an amendatory act. Although
House Bill 4481 was introduced and approved by
the House as an amendatory act, it ceased to be an
amendatory act when the Senate eliminated all
the provisions of House Bill 4481, except the num-
ber 4481 and the enacting clause, and added the
substitute reapportionment provisions. The substi-
tute bill, in contrast with original House Bill 4481,
was not an amendment of the Election Law. Thus,
even if the purpose of an act being amended may
be considered, the reapportionment provisions are
regarded as germane to the Election Law, and
germaneness is the test or standard for determin-
ing whether there was a change in purpose, *Moel-
ler* is not in point because Act 256 is not an
amendatory act and, unlike original House Bill
4481, did not purport to amend the Election Law.

In *United States Gypsum Co v Dep't of Revenue*,
363 Mich 548, 554, 556; 110 NW2d 698 (1961), this
Court sustained against a change-in-purpose chal-
lenge an act of the Legislature that imposed the
business activities tax although the tax imposed
had been changed from a tax on individual and
corporate income in the bill as introduced to a tax
on business gross receipts in the amended or sub-
stitute bill enacted. Both the original bill and the

bill enacted were, the Court said, bills to raise revenue by imposing a tax on income. In so holding, the Court stated that the test of whether an amendment or substitute is "germane" to the original bill is whether the change represents "an amendment or extension of the basic purpose of the original, or the introduction of entirely new and different subject matter". The Court said that the major purposes of the bill enacted in that case were "all within the original objectives of the bill as first introduced and as described in the title of the original version of the bill".

*Moeller* and *United States Gypsum*—the only cases decided by this Court involving the change-in-purpose provision—were decided before the change-in-purpose provision took its current form. The words "as determined by its total content and not alone by its title" were added in the 1963 Constitution.[11] The committee proposal that recommended adding these words to the original 1908 constitutional provisions stated that they would "strengthen[ ] the provision. By reference to the title alone, a title too broad would circumvent the provisions confining bills to their original purpose".[12]

Act 256 is unconstitutional. In substituting the subject matter of reapportionment for the subject matter of original House Bill 4481, Act 256 introduced an "entirely new and different subject matter".[13] There is no commonality of purpose whatso-

[11] The provisions requiring that the bill remain in the possession of each house for at least five days and prohibiting alteration or amendment "so as to change its original purpose" were first adopted as art 5, § 22, of the 1908 Constitution.

[12] 2 Official Record, Constitutional Convention 1961, p 2334. See fn 6 for text.

[13] The Election Law is primarily concerned with election procedures and does not generally establish the office to be voted upon. The office is generally established either in the constitution or in separate

ever between Act 256, reapportioning the Legislature, and original House Bill 4481, which would have amended the Election Law relating to delivery of school district election absentee ballots and the 1981 special election in Detroit. There is, thus, no need to consider now whether germaneness or some other test or standard other than the language of the change-in-purpose provision itself is the governing test or standard.

## III

The Attorney General argues that the change-in-purpose provision was satisfied by the media coverage of the legislative consideration of the reapportionment question, which was the subject matter of other bills that had not been in the possession of both houses for five days. The inquiry under the constitution is whether the bill is in the possession of both houses for five days and whether there has been a change in purpose. If these constitutional requirements have been satisfied, the constitution is not violated even if extensive substantive changes are adopted overnight with the attendant risk of hasty or snap judgment. Conversely, where a bill has not been in the possession of both houses for five days or there has been a change in purpose, the constitutional requirements are not satisfied even if it could be shown by material not part of the Journals of the House and Senate[14] that the

legislation or local charter authorized by law. The statutory provisions governing the boundaries of senatorial and representative districts were compiled in Chapter 4 concerning the Legislature and not in Chapter 168 concerning elections. 1925 PA 291 (concerning senatorial districts), 1943 PA 228 and 1953 PA 178 (both concerning representative districts), were compiled, as was Act 256, in Chapter 4.

[14] Cf. *Attorney General v Rice,* 64 Mich 385, 390-391; 31 NW 203 (1887); *People ex rel Hart v McElroy,* 72 Mich 446, 449-452; 40 NW 750 (1888); *Sackrider v Saginaw County Board of Supervisors,* 79 Mich 59, 66; 44 NW 165 (1889); *Attorney General v The Detroit & Saline Plank Road Co,* 97 Mich 589, 592; 56 NW 943 (1893).

purposes of publicity and avoiding hasty judgment have been fully satisfied. Any other construction of the constitution would expose many enactments to judicial inquiry regarding the extent of the publicity and the adequacy of the legislative consideration (snap judgment or considered judgment), creating opportunities for litigation that might result in undue interference with the effective exercise of legislative power.

## IV

Finally, the Attorney General argues that this challenge comes too late, and that providing relief will impede the orderly conduct of the 1984 primary and general elections. This Court, in response to *Reynolds v Sims,* 377 US 533; 84 S Ct 1362; 12 L Ed 2d 506 (1964), entered an order on June 22, 1964, reapportioning the Legislature. Nevertheless, there was an orderly election in 1964. Although it is arguable that this action should have been commenced earlier, this Court's order of June 19, 1984, as amended on June 21, 1984,[15] will not preclude the orderly conduct of the 1984 elections. It would not be appropriate for this Court to allow the 1984 elections for the House to be carried out in legislative districts prescribed in an unconstitutional law where that can be avoided and an orderly election can be conducted.[16]

---

[15] See fn 1 for text.

[16] The only question presented by this action is whether Act 256 is violative of Const 1963, art 4, § 24. The question whether the Legislature may, subsequent to May 4, 1982 *(In re Apportionment—1982, supra,* p 144), enact a reapportionment bill was not presented. The question whether (see *Legislature of the State of California v Deukmejian,* 34 Cal 3d 658; 194 Cal Rptr 781; 669 P2d 17 [1983]), and subject to what limitations, if any (see *In re Apportionment of State Legislature—1982, supra,* p 173, fn 34), the Legislature might enact a

reapportionment bill has not been, and could not be, decided in the instant case because such issues were not presented. The order of June 19, 1984, should not be read as expressing any view on those issues and in joining in that order I did not, and do not now, express any view on the merits of the questions not presented or decided.