MICHIGAN EDUCATION SPECIAL SERVICES ASSOCIATION v
COMMISSIONER OF INSURANCE

Docket No. 89261. Submitted April 16, 1987, at Lansing. Decided May
16, 1988.

Michigan Education Special Services Association, a nonprofit
membership corporation which provides insurance services to
member school districts and educational institutions, received
requests from two of its members for insurance rating informa-
tion specific to those members' employees. MESSA refused to
release that information. The requesting members filed com-
plaints with the Michigan Commissioner of Insurance. The
Commissioner of Insurance commenced an administrative pro-
ceeding against MESSA and The Equitable Life Assurance Soci-
ety of the United States, the underwriter of the insurance
program in question, on the basis that the failure to provide
that information was an unfair and deceptive practice under
§ 2021 of the Insurance Code. MESSA and Equitable filed a
complaint for declaratory relief in Ingham Circuit Court, nam-
ing the Commissioner of Insurance as defendant and claiming
that § 2021 was void and unenforceable because the adoption of
the act adding that section was violative of the change of
purpose clause of the Michigan Constitution. The circuit court,
Thomas L. Brown, J., found § 2021 to be constitutional and
granted summary disposition in favor of defendant. Plaintiffs
appealed.

The Court of Appeals held:

1. The circuit court used the proper standard of review.

2. While not properly raised in the circuit court, it is clear
that § 2021 is not limited in application to workers' compensa-
tion insurers as is urged by plaintiffs.

3. The adoption of § 2021 was not violative of the change of
purpose clause of Const 1963, art 4, § 24.

Affirmed.

1. INSURANCE — DECEPTIVE SALES PRACTICES — RATING INFORMATION.
The provision in the Insurance Code which makes it an unfair or

REFERENCES
Am Jur 2d, Insurance §§ 425-428.
See the Index to Annotations under Insurance.

deceptive practice for an insurer or rating organization to fail to furnish to an insured upon proper request all information pertinent to the setting of any rate affecting the insured is plainly and unambiguously directed at all rating organizations and insurers which make their own rates; it is not limited only to workers' compensation insurers (MCL 500.2021; MSA 24.12021).

2. CONSTITUTIONAL LAW — AMENDMENT OF BILLS — INSURANCE.
The adoption of the amendment to the Insurance Code which made the failure to provide rating information to an insured an unfair or deceptive practice was not violative of the change of purpose provision of the Michigan Constitution (Const 1963, art 4, § 24; MCL 500.2021; MSA 24.12021).

*Fraser, Trebilcock, Davis & Foster, P.C.* (by *Everett R. Zack* and *Iris K. Socolofsky*), for plaintiffs.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Harry G. Iwasko, Jr.,* and *Patricia Terrell Quinn,* Assistant Attorneys General, for defendant.

Before: CYNAR, P.J., and SHEPHERD and B. A. JASPER,* JJ.

B. A. JASPER, J. Plaintiffs Michigan Education Special Services Association and The Equitable Life Assurance Society of the United States (ELAS) appeal as of right from an order entered on June 23, 1986, granting summary disposition in favor of defendant Michigan Commissioner of Insurance. In their complaint, plaintiffs sought a declaratory judgment from the trial court holding § 2021 of the Michigan Insurance Code of 1956, as amended, MCL 500.2021; MSA 24.12021, violative of Const 1963, art 4, § 24. In granting summary disposition to defendant, the trial court found that § 2021 does not violate Const 1963, art 4, § 24. We affirm.

* Recorder's Court judge, sitting on the Court of Appeals by assignment.

MESSA is a tax-exempt voluntary employees' beneficiary association organized as a nonprofit membership corporation. MESSA provides insurance benefits for school employees and administrators throughout the State of Michigan by obtaining group insurance policies covering its members. During the time period relevant to this case, MESSA's health insurance underwriter was ELAS.

In 1983, MESSA received requests from two of its members, Ferris State College and the Bay City Public Schools, for insurance rating information specific to those members' employees. MESSA refused to provide the requested information, claiming that the information was not readily available and that release of such information to its members could defeat the benefit of plaintiffs' method of setting rates through the use of broad geographical locations. Plaintiffs contend that, if an employer were to learn that its experience was unusually good, the employer could use that information to obtain lower-cost health insurance elsewhere. Conversely, an employer who learned that its experience was unusually bad would retain its existing coverage to take advantage of other employers' better experiences. This "self-selection," plaintiffs argue, would defeat the overall benefits of averaging among a large group of individuals.

Following the filing of complaints with defendant by Ferris State College and the Bay City Public Schools, defendant commenced administrative proceedings against plaintiffs with respect to alleged violations by plaintiffs of § 2021. Section 2021 provides:

> An unfair method of competition and an unfair or deceptive act or practice in the business of insurance includes failure by a rating organization and an insurer which makes its own rates, within

a reasonable time after receiving written request therefor and upon payment of such reasonable charge as it may make, to furnish to any insured affected by a rate made by it, or to the authorized representative of such insured, all pertinent information to such rate.

Plaintiffs asserted as an affirmative defense that § 2021 was void and unenforceable because it was passed by the Michigan Legislature in violation of Const 1963, art 4, § 24. The parties stipulated to hold the administrative proceeding in abeyance pending judicial resolution of the constitutional challenge.

Plaintiffs filed their complaint for declaratory relief on August 31, 1984. Plaintiffs' motion for summary disposition was denied by the trial court on November 18, 1985, following issuance of a bench opinion finding § 2021 to be constitutional. The June 23, 1986, order granting summary disposition to defendant indicated that the defendant's motion was granted "for the reasons set forth from the bench on November 14, 1985."

Plaintiffs raise two issues on appeal. Plaintiffs argue: (1) the trial court applied an improper standard in determining the constitutionality of § 2021; and (2) the trial court erred in ruling that § 2021 was not enacted in violation of Const 1963, art 4, § 24.

Legislation challenged on a constitutional basis is presumed to be constitutional. *Johnson v Harnischfeger Corp*, 414 Mich 102, 112; 323 NW2d 912 (1982). Courts have a duty to construe a statute as constitutional unless the unconstitutionality is clearly apparent. *Rohan v Detroit Racing Ass'n*, 314 Mich 326, 342; 22 NW2d 433 (1946). This presumption of constitutionality equally applies where a statute is challenged on the basis that it was not enacted in accordance with constitutional

procedural requirements. *United States Gypsum Co v Dep't of Revenue,* 363 Mich 548, 556; 110 NW2d 698 (1961). The record fails to support plaintiffs' contention that the trial court reviewed the constitutionality of § 2021 under an improper standard. Rather, the trial court's presumption of constitutionality is mandated by law.

Plaintiffs alternatively argue that the trial court, by failing to limit application of § 2021 only to workers' compensation insurers, misapplied the rule of statutory construction which provides that statutes are to be interpreted in such a manner as to render them constitutional rather than unconstitutional. *Bohn Lumber Products Co v Public Service Comm,* 317 Mich 174, 184; 26 NW2d 875 (1947). However, plaintiffs' complaint did not request a declaration limiting application of § 2021 to workers' compensation insurers; instead, plaintiffs sought a declaration on the threshold issue of the constitutionality of § 2021, assuming § 2021 does not apply only to workers' compensation insurers. Moreover, the rule of construction alleged by plaintiffs to have been violated by the trial court does not apply where a statute is plain and unambiguous. *Collins v Waterford Twp School Dist,* 118 Mich App 798, 804; 325 NW2d 585 (1982), lv den 417 Mich 998 (1983). Section 2021 plainly and unambiguously refers to all rating organizations and insurers which make their own rates, not simply workers' compensation insurers.

The primary issue raised on appeal is whether § 2021 was enacted by the Legislature in violation of Const 1963, art 4, § 24. Section 24 provides:

> No law shall embrace more than one object, which shall be expressed in its title. No bill shall be altered or amended on its passage through either house so as to change its original purpose as

determined by its total content and not alone by its title.

It is the second sentence of § 24, commonly known as the "change of purpose clause," which plaintiffs allege was violated by the Legislature in the enactment of § 2021. Specifically, plaintiffs claim that the original purpose of the bill which evolved into § 2021 was to reform the workers' compensation insurance system. Plaintiffs argue that § 2021, as passed, altered the original purpose of the bill because § 2021 applies to all types of insurance.

The change of purpose clause contained in the Constitution of 1963 was included in the same article and section of the Constitution of 1908 as the "five-day rule," Const 1908, art 5, § 22. The five-day rule (now contained in Const 1963, art 4, § 26) provides that no bill is to be passed at any regular session of the Legislature until it has been printed or reproduced and in the possession of each house for at least five days. The purpose behind the five-day rule and the change of purpose clause is "to preclude last-minute, hasty legislation and to provide notice to the public of legislation under consideration." *Anderson v Oakland Co Clerk,* 419 Mich 313, 329; 353 NW2d 448 (1984).

In *Anderson,* our Supreme Court set forth the analysis to be followed by a court in determining whether enactment of a statute violated the change of purpose clause. The plaintiffs in that case claimed that 1983 PA 256, which revised the boundaries of election districts, was enacted in violation of the change of purpose clause. 1983 PA 256 was introduced as House Bill 4481, which was described as a bill of "housekeeping" amendments to the Election Law.

Citing *Moeller v Wayne Co Bd of Supervisors,* 279 Mich 505; 272 NW 886 (1937), the Court stated

that, in analyzing whether a bill has been altered or amended, a court is not limited to the contents of the title of the bill as introduced, but may also look to the title of the act which is being amended. Since 1983 PA 256, as passed, amended nothing, there was no title of an amended act to use as the measuring device. *Anderson, supra,* pp 326-327.

The second part of the *Anderson* Court's analysis involved an examination of the objectives of the originally introduced bill. The Court found that House Bill 4481 as finally passed served none of the objectives of the original bill: "The only similarity between original House Bill 4481 and the substitute bill as enacted was its number and the enacting clause." *Anderson, supra,* p 329.

Section 2021 was originally introduced as House Bill 5162.[1] House Bill 5162 amended certain provisions of the Insurance Code. Section 2021, as passed, describes certain conduct as being an unfair practice in the insurance business. The provisions contained in § 2021 are certainly comprehended and included in the title of the Insurance Code.[2] *Moeller, supra,* p 514.

---

[1] As introduced, House Bill 5162 was entitled:

> A bill to amend sections 2406, 2431, and 2436 of Act No. 218 of the Public Acts of 1956, entitled as amended "The insurance code of 1956," being sections 500.2406, 500.2431, and 500.2436 of the Compiled Laws of 1970.

[2] At the time of enactment of § 2021, the title of the Insurance Code read in full as follows:

> An act to revise, consolidate, and classify the laws relating to the insurance and surety business; to regulate the incorporation or formation of domestic insurance and surety companies and associations and the admission of foreign and alien companies and associations; to provide their rights, powers, and immunities and to prescribe the conditions on which companies and associations organized, existing, or authorized under this act may exercise their powers; to provide the rights, powers, and immunities and to prescribe the conditions on which other

Turning to the contents of House Bill 5162, as originally introduced the bill was designed to amend provisions of the Insurance Code relating to the regulation of insurance. While included within House Bill 5162 were sections regulating workers' compensation insurance, House Bill 5162 amended sections of the Insurance Code relating to liability insurers generally. Section 2021 serves the objectives contained in the original House Bill 5162. Accordingly, we conclude that the enactment of § 2021 did not violate the provision in Const 1963, art 4, § 24 which prohibits the alteration or amendment of a bill during its passage through either house so as to change its original purpose.

Affirmed.

persons, firms, corporations, and associations engaged in an insurance or surety business may exercise their powers; to provide for the imposition of a privilege fee on domestic insurance companies and associations and the state accident fund; to provide for the imposition of a tax on the business of foreign and alien companies and associations; to provide for the imposition of a tax on the business of surplus line agents; to modify tort liability arising out of certain accidents; to provide for limited actions with respect to that modified tort liability, and to prescribe certain procedures for maintaining those actions; to require security for losses arising out of certain accidents; to provide for the continued availability and affordability of automobile insurance and homeowners insurance in this state, and to facilitate the purchase of that insurance by all residents of this state at fair and reasonable rates; to provide for certain reporting with respect to insurance, and to prescribe duties for certain state departments and officers with respect to that reporting; to establish and continue a nonprofit malpractice insurance fund to provide malpractice insurance to health providers; to modify and clarify the status, rights, powers, duties, and operations of the nonprofit malpractice insurance fund; to provide for the departmental supervision and regulation of the insurance and surety business within this state; to provide for the conservation, rehabilitation, or liquidation of unsound or insolvent insurers; to provide for the protection of policyholders and claimants of unsound or insolvent insurers; and to provide penalties for the violation of this act.